[Argued February 1, 1893; decided February 20, 1893.]

## GIBSON *v.* OREGON SHORT LINE RY. CO.

[S. C. 32 Pac. Rep. 295.]

1. INJURY TO TRACKWALKER — SUFFICIENCY OF RULES.—Where a trackwalker of defendant railroad, while crossing its bridge, saw an approaching engine half a mile away, and thinking he could get across, started to run, and fell and hurt his leg, and then stepped on one of the bridge caps placed along the bridge for that purpose, where he remained in safety, and he had ample time after sighting the train to retreat or step on a cap, he cannot recover on the ground of the insufficiency of the rules of the company to protect trackwalkers in not providing for the frequent whistling of engines before approaching bridges, his injury not having been caused by the want of such rules.

2. MASTER AND SERVANT — RISK OF EMPLOYMENT.—It is a general rule that a servant assumes the risks incident to his employment, when he possesses sufficient intelligence and knowledge to comprehend them, and if he is an adult, the presumption is that he has such knowledge; yet, if the work, or the manner of doing it, is dangerous, and the servant, from youth, inexperience, or incapacity, fails to comprehend the danger, it is the duty of the master to point out and explain the danger.

3. INJURY TO EMPLOYE — ASSUMING RISK.—Where plaintiff was an adult of ordinary intelligence, without any previous experience in trackwalking, but lived near the railroad, and had several times been over the section on which he worked, and knew the bridges on it, and that the projecting caps were at frequent intervals on such bridges, and furnished conspicuous places of safety against passing trains, defendant had a right to assume that plaintiff would comprehend and avoid the risk incident to his employment, and the company is not liable for a failure to specially

instruct plaintiff to resort to the caps when caught on the bridge by an approaching train.

Wasco County: W. L. BRADSHAW, Judge.

Action by S. B. Gibson against the Oregon Short Line & Utah Northern Railway Company. Judgment for plaintiff.

Defendant appeals. Reversed.

*Wallace McCamant ( W. W. Cotton,* and *Zera Snow* on the brief), for Appellant.

*Alfred S. Bennett,* for Respondent.

LORD, C. J.—This is an action to recover damages for negligence of the defendant, causing an injury to the plaintiff while at work in the employment of the defendant. The negligence complained of is predicated upon two grounds: *First,* that the defendant neglected to provide suitable rules or regulations for the protection of its trackwalkers, and especially for the protection of the plaintiff; and, *second,* that the defendant failed to instruct the plaintiff of the dangers known to it, but unknown to the plaintiff, incident to the employment in which he was about to engage.

1. The principal contention for the appellant is that the trial court erred in denying the defendant's motion for a nonsuit, and in refusing to instruct the jury to find for the defendant. Briefly and substantially, the evidence shows that the rules and regulations adopted by the defendant required the engineers of its trains to whistle at whistling posts in passing over the road; that the plaintiff was employed by a section foreman of the defendant as a trackwalker on a section of the defendant's road lying between the stations of Viento and Hood River; that previous to such employment, the plaintiff was a rancher residing near Hood River and in the vicinity of the defendant's road, and had ridden over this section of it some two or three times; that there were several high

bridges and trestles of considerable length, and some of them curved, on the section over which the plaintiff had engaged to walk as a trackwalker; and that at frequent intervals, the bent caps projected beyond the ties, to which a trackwalker could repair as a place of safety, or means of escape from a passing or unexpected train, when caught on any one of such bridges or trestles. The plaintiff testifies that before starting out to walk the track, he told the section foreman that he was inexperienced and wished to be fully instructed as to his duties, but that the section foreman failed to give him any instructions about getting on the caps when caught on the bridges or trestles by an approaching train; that while he was passing over the road, and when on one of these bridges or trestles, he saw an approaching train some half mile distant, and thinking he saw the end of the bridge but a short distance ahead, he started to run toward it to avoid the train, and that while so running he stumped his foot against a spike in the bridge and fell down, and as the train in the meantime was getting nearer to him, he gathered himself up and hastily got down on a cap, where he remained until the train passed; that his leg was somewhat bruised, but that no bones were broken, or other serious injury suffered by the fall; that after the train passed he got up and retraced his footsteps to Viento, and continued in the service of the defendant two or three days thereafter, when he quit its employment.

As to the insufficiency of the rules to protect trackwalkers from the dangers of an approaching train while in the discharge of their duties, the contention is that they were defective in not providing that the engines should whistle at frequent intervals before approaching bridges or trestles on which trackmen might be walking. But the facts as disclosed by this record do not sustain this contention.    The evidence shows that the injury was not caused by a defective system of rules, or the failure to observe them.    It was not occasioned either because

the engine did not whistle, as required by the rules, or because the rules were defective in not requiring the engine to whistle at more frequent intervals. for the plaintiff saw the approaching train half a mile ahead, and had ample time to retreat or step from the bridge to the caps, and there remain in safety until the train passed.

2. . As the argument indicated, it is the other ground of complaint upon which the plaintiff chiefly relies to sustain his action. This is, that the foreman of the defendant failed to instruct the plaintiff, who was inexperienced, how to avoid the danger incident to his work, in the event he was caught on a bridge or trestle by an approaching train. The solution of this question involves the inquiry whether the danger or risk incident to such employment, in view of the plaintiff's inexperience, required the defendant to give him such instructions as would enable him to comprehend such danger and do his work safely. The general rule of law governing the liability of the master for personal injuries received by the servant in the course of his employment is that the servant assumes all the risks and hazards incident to such employment, when he possesses sufficient intelligence and knowledge to comprehend them ; and if he be an adult person, unless the evidence shows otherwise, the presumption is that he has sufficient intelligence to comprehend the dangers incident to such service or employment. But when the master employs a servant to do work in a dangerous place, or where the mode of doing the work is dangerous, but apparent to persons of capacity and knowledge of the subject, and such servant, from youth or inexperience, or want of capacity, fails to appreciate or comprehend the danger of working at such place, or the dangerous character of the work, it is the duty of the master to point out and explain to such servant the dangers or risks of such employment, so as to enable him to comprehend them and do his work safely, and if the master fails or neglects to do so, and by reason

thereof such servant is injured, the master is liable. This principle of the law is well stated by DEVENS, J., in *Sullivan* v. *India Mfg. Co.* 113 Mass. 399, when he said: "It may frequently happen that the dangers of a particular position for, or mode of, doing work, are great, and apparent to persons of capacity and knowledge of the subject, and yet a party, from youth, inexperience, ignorance, or general want of capacity, may fail to appreciate them. It would be a breach of duty upon the part of the master to expose a servant of this character, even with his own consent, to such dangers unless with instructions or cautions sufficient to enable him to comprehend them, and to do his work safely with proper care on his own part." From these considerations, it is clear that the servant does not assume the risk incident to such dangerous employment, when from want of age or experience, or general capacity, he does not comprehend them, unless the master gives him such instructions and cautions as will enable him to fully understand and so avoid them. If, however, the danger is apparent, and the servant is of sufficient discretion to see and avoid it, the master is not liable for an injury resulting to the servant, though he did not warn him: Wood, Mast. & Serv. § 340. The servant must exercise ordinary care to avoid injuries; he should seek to inform himself of the dangers likely to confront him in the performance of his duties. As Mr. Beach says: "He must not go blindly and heedlessly to his work when there is danger. He must inform himself. This is the rule everywhere." Beach, Contrib. Neg. § 138.

3.    The evidence shows that the plaintiff told the foreman that he knew nothing about the duties of a trackwalker, and asked for instructions. The foreman gave him some instructions in relation to his employment, and such, perhaps, as the foreman may have considered sufficient to enable him to understand his duties, in view of his age and intelligence. He did not, however, instruct him that he must get out on the caps to avoid injury

when caught out on the bridges or trestles by an approaching train. And the failure to so instruct him, unless the danger was obvious and the plaintiff was of sufficient discretion to see and avoid it, was negligence for which the defendant is liable. The danger from an approaching train, when the plaintiff was on the bridges or trestles, was practically the only danger which was incident to his employment. The plaintiff was an adult of ordinary intelligence, but without any experience in the employment which he solicited. He lived near the railroad, had been over the section upon which he worked several times, and knew that there were bridges and trestles upon it. The danger was patent. The plaintiff saw the train approaching half a mile away, and his conduct at that time indicates that he appreciated the danger to which he was exposed by collision, unless he got out of its way. This danger is of that sort which every man of ordinary intelligence, who knows anything about railroads, comprehends, and understands he must be ready to avoid when he enters upon a railroad track, and especially upon its bridges and trestles, if he would escape injury. The plaintiff knew and understood the danger to which he became subject by the approaching train, but he claims that he should have been instructed how to avoid it. In other words, because of his inexperience or want of general capacity, he should have been instructed that, when, in the course of his employment, he was caught by an approaching train on a bridge or trestle, he must step out on the caps, and remain until the train passed. These caps projected out at short and frequent intervals, some distance from the ties, and furnished a safe place to which a trackman could repair and remain until the train passed. They were visible and conspicuous as places of safety, because there was no other place, except these caps, to which one might resort to avoid collision with a passing train, when on the bridges or trestles. The danger was obvious, and the means of escape from it apparent to any one of ordinary

intelligence in the exercise of reasonable care. The plaintiff could not have failed to see the caps in the exercise of ordinary inspection and carefulness, and, knowing the danger, to understand that he must resort to them to avoid the train, unless he was so near the end of the bridge that he could get off of it before the train came along, as he seems to have thought he could do. In fact, his conduct shows that when the train approached, he realized the danger to which he was exposed, and possessed sufficient intelligence and discretion to know how to avoid it, for, after his fall, he immediately got down on the cap, and sat there in safety until the train passed. The risk incident to the employment was obvious, and such as a man of common intelligence, by the exercise of ordinary inspection and carefulness on his part, would be able to avoid. In the light of the facts, the defendant had a right to assume that the plaintiff would avoid the risk incident to his employment, without any special instructions.

The judgment must be reversed, and the cause remanded, with direction to the trial court to enter a judgment of nonsuit.