JOHNSTON *v*. ELM COOPERAGE CO.

1. MASTER AND SERVANT—PERSONAL INJURIES—EVIDENCE—NEGLIGENCE—DIRECTED VERDICT.

In an action by an employee to recover for the loss of an arm in defendant's factory by a machine consisting of a swinging table with a circular saw working through a slit in the back and bottom which was put in operation by a

lever, evidence that during the six months plaintiff had used the machine the lever had never failed to work, that a few moments before the accident the machine was performing its proper function, that no part of the apparatus had been constructed to support a person falling or slipping on the floor, and that at the time the accident happened plaintiff was not operating the machine, but was returning from carrying away some poles he had cut, when he slipped and fell against the table, disengaging the lever, and was injured, did not show any negligent conduct of defendant, and its motion for a peremptory verdict should have been granted.

2. Trial—Negligence—Instructions—Master and Servant.
    Where there was no evidence from which the jury could determine that the force applied by plaintiff in falling against the table was a greater strain than the device would receive in the ordinary conduct of the business, it was error for the trial court to submit that question to the jury.

3. Master and Servant—Trial—Instructions—Duty of Master.
    The trial court was in error, in submitting the question of defendant's liability to the jury, in limiting the question to the condition of the machine on the day in question and to the strain put upon it by plaintiff when he slipped and fell, as the true rule should be measured by the probability, and not the possibility, of an accident, and should be applicable in like circumstances if the device had been in use a day or a month, where an employee stumbled or fell, and, to save himself, grasped at, or fell against, machinery not up to some standard of efficiency.[1]

Error to Charlevoix; Mayne, J. Submitted June 29, 1915. (Docket No. 30.) Decided September 28, 1915. Rehearing denied April 21, 1916.

Case by Earle H. Johnston against the Elm Cooperage Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

---

[1] For different forms of statement of general rule with respect to master's duty as to places and appliances furnished to servant, see note in 6 L. R. A. (N. S.) 602.

*De Foe, Hall & Converse,* and *A. G. Urquhart,* for appellant.

*M. E. Silverstein* (*Clink & Williams,* of counsel), for appellee.

OSTRANDER, J.  Defendant introduced no testimony. That produced on the part of the plaintiff tended to prove that when injured he was 27 years old, and had worked for defendant, at its plant, from about August 1, 1911, to March 21, 1912, when he was injured by the cutting off of his right arm at the elbow.  Excepting 8 weeks devoted to other duties, he had worked, most of the time, with the machinery and apparatus which inflicted the injury.  This apparatus consisted of a circular saw, a swinging table, and a lever, and was used to cut the ends off of hoop poles.  The swinging table, hanging from the ceiling, was about 5½ feet long, 18 inches wide, with a back 18 inches high—a platform with a raised back.  In the back and floor of it was a narrow opening, or slit, to receive the saw. The lever was a piece of hardwood about 4 feet long, fastened at one end, back of the saw, by a bolt to the saw frame, or to an upright in the wall.  When the table was affected by gravity only, hanging vertically from its supports, about 8 inches of the circumference of the saw showed through the slit in the back and bottom of it.  In use it was pulled, or swung, forward, towards the operator, entirely free from the saw, and was held in this position by the lever, in the underside of which a notch had been cut, which would engage with the back of the table.  The operator, the table being so held by the lever, laid upon it a bundle of poles, and, having arranged them, lifted the lever and pushed, or swung, the table against the saw until the poles were severed, when he swung it towards himself until the notch in the lever engaged the back of the table, when he removed, and carried away the poles. Whether the lever was always resting upon the back

of the table and engaged the back automatically is not made clear. It is inferred that the engagement was automatic, but was aided, or made certain, by the operator. It is inferred that the table was swung forward by the operator, the lever riding upon the back of it, until, having passed the notch, it was released, and was held by the notch.

Upon the occasion when he was injured, plaintiff had sawed some poles, pulled the table into the position where it was held by the lever, removed the poles, and taken them away. Returning, he slipped, why or upon what does not appear, and, in an effort to save himself from falling, caught at, or struck, or fell upon or against, the table in such manner as to disengage the lever and cause the table to swing back upon the saw, severing his arm. In the time that plaintiff had operated the table, the lever had never failed to hold it until released by the operator. But it had, when operated by others, or by another, been disengaged upon some occasions by the jar of machinery and by throwing upon the table loads of poles. The extent of the vibration caused by machinery upon such occasions, the size of the load of poles cast upon the table and how thrown down, the manner in which action of the device was secured—whether automatic or otherwise—are not explained. Long use had worn the lever, and, instead of an opening going squarely into the wood, the portion against which the back of the table rested when held by it was not flat, but was curved. Instead of an inch of lever substantially parallel with the back of the table when holding it in place, there was but about half an inch which really engaged the back of the table. It also had a lateral motion of some 5 or 6 inches, owing to the play it had upon the bolt which held it at its end.

The court submitted to the jury whether it was negligence for the defendant to continue the use of the

lever in its described condition, and instructed them that the employer could not be held to supply a device which would under any and all conditions hold the table away from the saw. Instructed them, also, in effect, that if they found that in slipping and in his effort to save himself plaintiff did not subject the table to a greater force, or jar, than it would receive in its ordinary use, plaintiff might recover. The theory of the charge is that the employer was not responsible if the weight or pressure or disturbance exerted was greater than the apparatus was intended to bear or sustain, but otherwise might be held liable. To quote:

"Now, gentlemen, one of the things in this case that you must determine is: Was this a reasonably safe machine? In other words, as it was constructed and as it stood there on the day in question, was it reasonably safe? Would it stand the strain, the jar or shock usually put upon it, and that was intended to be put upon it, and must necessarily be put upon it, in the actual running of the business, as it was actually then operated by the defendant? If it was strong enough to stand that strain, then the defendant has met its full duty in the case. If the plaintiff, when he slipped, placed an unusual or extraordinary strain, shock, or jar upon this machine—outside of and beyond that which it would receive in the actual working of each day—then he cannot recover, because the machine was subjected to a test that it was not intended to stand, beyond the working test as I have given it to you."

It will be noted that the lever and its action were simple. It was not a safety device, but a convenience, a part of the apparatus useful in operating the saw, as was the table and its supports. If the empty table was disengaged while the saw was running, no harm could result; and at the moment before plaintiff was injured the device was performing, as it had performed for the 6 months or more that plaintiff had operated the saw, its proper function. It was holding the table in position to receive another bundle or armful of poles.

Plaintiff was not injured while operating the saw. It was as though another workman had, in passing, slipped, caught the table, and been injured. No part of the apparatus had been constructed, nor was it maintained, to support a person falling, or slipping on the floor.

The motion of defendant for a peremptory instruction should have been granted. There was no evidence from which the jury could determine that the force applied to the table by plaintiff, or the blow it received, was a greater strain upon the device than those it would receive in the actual ordinary conduct and management of the business. Again, the rule given to the jury for determining defendant's liability is wrong. The rule was applied after the device had been some time in use. If it is a proper rule, it would be applicable in like circumstances if the device had been in use a day or a month. It would be applicable in any case where an employee stumbled or fell, and, to save himself, grasped at, or fell against, machinery not up to some standard of efficiency, which gave way, and so did not save him from, or did expose him to, serious injury. We said in *Schroeder* v. *Car Co.*, 56 Mich. 132, 134 (22 N. W. 220, 221):

"The fact of injury and the possibility of guarding against it do not necessarily make out a case of culpable negligence. Very few acts in life are done with such care to prevent accidents as would have been possible; and the law only requires of any one that degree of care and prudence which persons who are reasonably careful ordinarily observe."

And in *Johnson* v. *Jackson,* 168 Mich. 149, 154 (133 N. W. 945, 947), we said:

"Defendant's duty in the premises is to be measured by probabilities—not by the possibility that the lever could be released in the manner suggested by counsel, but by the probabilities that any employee in the performance of duty in the place in question would ever in such a way release the clip and the lever."

Plaintiff is most unfortunate, but his injury cannot be ascribed to the negligent conduct of his employer.

The judgment is reversed, and a new trial granted.

BROOKE, C. J., and KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.